UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| J. KENNETH KEARNEY USA LTD.,   ) <br>   ) <br> Plaintiff,   ) <br>   ) <br> v.   ) <br>   ) <br>   ) <br> DAVID SMITH,   ) <br>   ) <br> Defendant.   ) <br>   ) | Civil Action No. 04 CV 12643 RCL |

## LOCAL RULE 81.1 STATEMENT

Pursuant to Local Rule 81.1 of the United States District Court for the District of Massachusetts, attached as Exhibit A is a certified copy of all of the filings in the matter of <u>J. Kenneth Kearney USA Ltd.</u>, Civil Action No. MICV2004-04576, in the docket of the Superior Court of the Commonwealth of Massachusetts for Middlesex County.

DAVID SMITH,
By his attorneys,

_____
Timothy P. Van Dyck
Windy L. Rosebush
Edwards & Angell, LLP
101 Federal Street
Boston, MA 02110
617-439-4444

## CERTIFICATE OF SERVICE

I, Windy L. Rosebush, hereby certify that on this 30th day of December, 2004, I caused a copy of the foregoing document to be served upon Kristin M. Cataldo, Esq. Gadsby Hannah LLP, 225 Franklin Street, 21st Floor, Boston, MA 02110 by first class mail.

_____
Windy L. Rosebush

MCV2004-04576

J KENNETH KEARNY USA LTD

V.

DAVID SMITH

****REMOVED TO US DISTRICT COURT****

**Commonwealth of Massachusetts**
**SUPERIOR COURT DEPARTMENT**
**THE TRIAL COURT**
**CAMBRIDGE**

MICV2004-04576

I, Karen O'Connor, Deputy Assistant Clerk of the Superior Court, within and for said County of Middlesex, do certify that the annexed papers are true copies made by photographic process of pleadings entered in the Superior Court on the 17th of Nov., in the year of our Lord, Two Thousand Four



In testimony whereof, I hereunto set my hand and affix the seal of said Superior Court, at Cambridge, in said County, this 21st of Dec., in the year of our Lord, Two Thousand Four

*Karen A. O'Connor*
Deputy Assistant Clerk



UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                      )
J. KENNETH KEARNY USA LTD.,           )
                                      )
           Plaintiff,                 )
                                      )
v.                                    )        Civil Action No. _____
                                      )
DAVID SMITH,                          )
                                      )
           Defendant.                 )
                                      )
```

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1441 and 1446, Defendant David Smith ("Smith") hereby files

this Notice of Removal. In connection therewith, Smith states as follows:

1.    <u>State Court Action</u>

Plaintiff J. Kenneth Kearny USA Ltd. ("JKK") sued Smith for Fraud (Count I),

Conversion/Misappropriation of Confidential Information (Count II), Violation of Mass. Gen.

Laws ch. 93 § 42/Statutory Misappropriation of Trade Secrets and/or Confidential Information

(Count III), Breach of Fiduciary Obligation (Count IV), and for violation of Mass. Gen. Laws ch.

93A (Count V) in the Superior Court of the Commonwealth of Massachusetts for Middlesex

County, Civil Action No. MICV2004-04576.

2.    <u>Federal Jurisdiction</u>

JKK's Complaint alleges that it is a New York corporation with a principal place of

business in Framingham, Massachusetts. (<u>See</u> Compl. ¶ 1.) The Plaintiff also alleges that Smith

is a Canadian citizen with his principal residence in Orange Beach, Alabama. (<u>See</u> Compl. ¶ 2).

Thus, there is complete diversity between JKK and Smith, and this Court has subject matter

jurisdiction over any dispute between them, pursuant to 28 U.S.C. § 1332. Consequently, removal to this Court is proper pursuant to 28 U.S.C. § 1441.

      3.    <u>Timeliness of Notice of Removal.</u>

Smith first received service of the Complaint or about November 19, 2004 when it was mailed to his home on November 19, 2004. A copy of the Complaint was also mailed to Smith's business address on November 18, 2004, however, such mailing does not constitute proper service under Rule 4(e). However, based upon either date, removal of this action is timely under 28 U.S.C. §1446(b).

      4.    <u>Relief Requested.</u>

The Defendant requests that the United States District Court for the District of Massachusetts assume jurisdiction over the above-captioned action. Pursuant to 28 U.S.C. § 1446(a), copies of all process and pleadings served upon the Defendant, which includes only the Summons and Complaint, are attached as Exhibit A. Certified copies of the entries in the Superior Court docket will be filed in connection with Defendants' Local Rule 81.1 Statement as soon as they are received.

DAVID SMITH,

By his attorneys,

Timothy P. Van Dyck, (BBO #548347)
Windy L. Rosebush, (BBO #636962)
EDWARDS & ANGELL, LLP
101 Federal Street
Boston, MA 02110
(617) 439-4444

Dated: December 17, 2004

BOS_471534_1.DOC/WROSEBUSH

## CERTIFICATE OF SERVICE

I, Timothy P. Van Dyck, hereby certify that on this 17th day of December, 2004, I caused a copy of the foregoing document to be mailed via first-class mail, to Kristin M. Cataldo, Gadsby Hannah LLP, 225 Franklin Street, 21st Floor, Boston, MA 02110.

Timothy P. Van Dyck

BOS_471534_1.DOC/WROSEBUSH

TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER

## COMMONWEALTH OF MASSACHUSETTS

..............MIDDLESEX.................. , ss
[seal]

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
. No.

J...KENNETH..KEARNEY..USA..LTD., Plaintiff(s)

v.

......DAVID..SMITH................ , Defendant(s)

## SUMMONS

To the above-named Defendant:

You are hereby summoned and required to serve upon ..William.A...Zucker..and..Kristin.M...Cataldo

of..Gadsby.Hannah.LLP............. plaintiff's attorney, whose address is ..225.Franklin.Street,..21st.Fl

Boston,.MA.02110..................................., an answer to the complaint which is herewith

served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you

fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also

required to file your answer to the complaint in the office of the Clerk of this court at .Superior..Court..House

40..Thorndike..St.,.Cambridge,.MA.02141.. either before service upon plaintiff's attorney or within a

reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may

have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's

claim or you will thereafter be barred from making such claim in any other action.

Witness, Suzanne V. DelVecchio, Esquire, at ..Cambridge........................................................ ......

the ...................17th.............................. day of ..November.............................................

....................., in the year of our Lord .2004................................... .

*Edward J Sullivan*

Clerk

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

NOTES.

1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

FORM NO. SUP. — 001

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

J. KENNETH KEARNEY USA LTD.,                )
                                             )
                Plaintiff,                   )
                                             )
v.                                           )
                                             )     Civil Action No.
DAVID SMITH,                                 )
                                             )
                Defendant.                   )
                                             )

## COMPLAINT AND JURY DEMAND

Plaintiff J. Kenneth Kearney USA Ltd. ("Kearney USA") brings this action against David Smith ("Smith") for fraud, misuse of confidential information and, alternatively, for breach of fiduciary duty.  These claims for relief arise out of Smith's participation in and direction of a fraudulent scheme to obtain from Kearney USA confidential business information and to provide Smith with market and sales information from Kearney USA, to induce Kearney USA to enter into a business deal with Smith's joint venture, and to induce Kearney USA not to go forward with other competitive ventures.  At the same time, Smith had no intention of completing the joint venture and took for himself the opportunities that were to be business opportunities of the joint venture.

## PARTIES

1.      Plaintiff Kearney USA is a New York corporation with its principal place of business at 111 Speen Street, Framingham, Massachusetts.  The two operating principals of Kearney USA are Ken Kearney and Paul Miller, both of whom work and reside in the Commonwealth of Massachusetts.

2.      Defendant Smith is a Canadian citizen with his principal residence in Orange Beach, Alabama. On information and belief, Smith is at least a fifty percent owner of Hartge Smith Nonwovens LLC ("HSN"), a company duly organized under the laws of the State of Ohio, and an instrumentality of Smith in the scheme to defraud. The other principal of HSN is Perry Hartge.

## JURISDICTION

3.      During the relevant time period, Smith purposefully had contacts with Kearney USA in Massachusetts and, in connection with the claims for relief alleged herein, directed communications to Kearney USA in Massachusetts and made misrepresentations to Kearney USA in Massachusetts that were intended to and did induce reliance by Kearney USA thereon in Massachusetts. Such conduct establishes personal jurisdiction over the defendant under M.G.L. ch. 223A § 3.

## FACTS

4.      Kearney USA is a company that specializes in the marketing and sale of nonwoven fabrics, with a particular expertise in the marketing and sale of spunbond polyester. Kearney USA does business with fabric suppliers and distributors in the United States and abroad, importing fabrics into the United States market for industrial and other commercial clients.

5.      Kearney USA's initial contact with Smith came through Roberto Baroni ("Baroni"), a principal of Nonwoven Industries SpA ("NWI"), an Italian corporation with which Kearney USA had a business relationship. NWI is a leading manufacturer of spunbond fabric in Italy, with expertise in the technology of manufacture, installation, assembly and operation of spunbond equipment and the construction of spunbond plants.

6.      Kearney USA was NWI's marketing and sales agent for NWI's products and

services throughout the United States. Spunbond fabrics are used in industries for a variety of specialized uses. Developing relationships for new products or manufacturers in the spunbond industry is a time consuming and lengthy process. Knowledge of marketing devices, customer contacts, and customer approaches requires a high degree of specialized skill in order to obtain customer confidence and acceptance. At the same, knowledge of market opportunities and sales related information is also specialized market intelligence developed over years of selling into the market. By virtue of its extensive experience with the United States domestic market, Kearney USA has specialized relationships and market and sales information which Kearney USA ordinarily employs to advance its own sales and those of represented manufacturers making sales in the United States.

## Smith's Initial Approach to Baroni and NWI

7.    On information and belief, in 2002, HSN purchased spunbond manufacturing equipment (the "Equipment") at a foreclosure sale in Cincinnati Ohio. HSN had little experience in the manufacture of spunbond fabrics and contacted NWI in May 2002 in determine if NWI was interested in purchasing the equipment. HSN was not then in the business of manufacturing and selling spunbond fabrics in the United States domestic market.

8.    On information and belief, although HSN had obtained the equipment at foreclosure for $295,410, HSN's initial offer to NWI was to sell the same equipment for $4,110,000. HSN also represented to NWI that other companies worldwide were interested in purchasing the equipment, but that HSN, if a sale price could not be agreed upon, was willing to enter into a joint venture with NWI in which HSN would contribute the Equipment, by selling the Equipment allegedly for less than its market value, and NWI would contribute the equipment and manufacturing expertise, as well as cash, in order to manufacture spunbond fabrics in the United States.

-3-

9.    In February of 2003, before consummating any joint venture with Smith and HSN, Baroni approached Kearney USA in Massachusetts about the joint venture and introduced Kearney USA to Smith and HSN for the purpose of providing marketing, sales and cost expertise in the domestic United States market.

10.    In April 2003, Smith caused Nonwovens Industries (USA) L.L.C. ("NWI-USA") to be formed as an Alabama limited liability company, for the purpose of being the vehicle for the joint venture with NWI and Baroni. On information and belief, NWI-USA was to be presented to the industry as a sister company to NWI, thus enabling NWI-USA to capitalize on the goodwill and reputation of NWI and to piggyback onto Kearney USA's marketing efforts for NWI in the United States. In July/August, 2003, Smith and Baroni formalized their relationship, executing a joint venture agreement. However, on information and belief, at no time did Smith cause HSN to actually transfer the Equipment to NWI USA.

### Smith's Representations

11.    Despite the fact that Smith had no intention of actually transferring the Equipment to NWI-USA, Smith approached Kearney USA directly and represented that NWI-USA had been formed and had been capitalized. In a series of meetings and conversations with Kearney USA's principals, Messrs. Kearney and Miller, Smith also represented to Kearney USA that:

(a)    the Equipment had been improved with a "scrap recycling process";

(b)    the Equipment was presently capable of manufacturing flat bond fabrics;

(c)    the Equipment had been tested before HSN purchased it and that it was operational;

(d)    the Equipment had been "shaken down", that there were "no leaks" and that the Equipment was operational;

(e)    Smith had assembled a team that possessed the necessary know-how and technical expertise to operate the Equipment and produce flat bond;

-4-

(f)    the Equipment, while purchased by HSN, was to be transferred to NWI-USA;

(g)    Kearney USA would be the exclusive distributor and broker for NWI-USA's products;

(h)    In exchange for providing its sales and marketing expertise, NWI-USA would be divided into two divisions; an Operational Division, with Class A voting shares, and a Trading Division, with Class B shares;

(i)    Kearney USA would from the outset receive and would be granted 20% of the Class B shares, with a right within 2 and a half years to acquire a 20% interest in the Class A shares at a price of $3,000,000, based upon the forecasted value of the joint venture at that time;

(j)    Smith would cause NWI to enter into a Sales and Marketing Agreement to document Kearney USA's rights;

(k)    Smith considered the relationship with Kearney USA to be of "high importance", that "we are moving forward" and that any delay was simply making sure the "i's are dotted and the t's crossed;" and

(l)    Smith repeatedly referred to Kearney USA as his partner.

12.    Contemporaneously with these representations, Smith also was requesting from Kearney USA information regarding the market, sales, customers and forecasts for expected sales of the joint venture, which Smith assured Kearney would be treated as confidential and proprietary information of Kearney USA.

13.    Smith's representation that there was a viable opportunity to enter the flat bond market was especially attractive to Kearney USA because, at that time, there was only one company that had the technology to produce flat bond in the United States.

14.    As of September 17, 2003, NWI-USA, NWI and Kearney USA entered into a Sales and Marketing Agreement ("the Agreement"). Although made as of September 17, 2003, the Agreement was not actually signed until early October, 2003. The Agreement recognized that as of the date of the Agreement, Kearney USA had a twenty percent (20%) interest in NWI-USA's Class B Units ("Kearney USA Interest") and further provided that Kearney USA would

manage the performance of NWI-USA's Trading Division and direct the sales and marketing. All information already or to be provided to the joint venture was to be treated as confidential and used only for the purposes of the joint venture.

15.    All of these representations were made to Kearney USA in order to cause Kearney USA to stop pursuing other valuable opportunities to bring competing products into the United States market, and to provide Smith with (a) confidential information pertaining to Kearney USA's current customers and marketing plans; (b) industry forecasts and marketing plans; and (c) information concerning Kearney USA's present purchasing power (collectively Kearney USA's "Confidential Information"). At Smith's request, Kearney USA began to create a market for NWI-USA's products, put together operating budgets and forecasts for NWI-USA, began the process of setting up a website for NWI-USA and establishing a dedicated 800 # at its offices for NWI-USA, and hired an independent contractor to work solely on the NWI-USA marketing venture.

16.    In particular, based on Smith's representations, Kearney USA devoted marketing resources and efforts on behalf of NWI-USA, including (a) giving NWI-USA immediate access to its customers, which customers could be turned over to NWI-USA for immediate cash flow operations; (b) providing Smith access to a manufacturing expert in the field of flat bond; (c) further developing and refining its marketing plans and forecasts for NWI-USA; and (d) actively soliciting customers on NWI-USA's behalf. In October 2003, Kearney USA brought one of its top customers to Alabama to meet directly with NWI-USA and Smith.

17.    In December 2003, Smith and Baroni traveled to Boston for a two day meeting with Kearney USA. On Thursday, December 4, 2003, the parties held an all day meeting at Kearney USA's offices in Framingham. During the meeting Smith continued to drum up

-6-

excitement over NWI-USA, stating that "they were going to make millions" together and reiterating that they were partners. At the meeting, Kearney USA further revealed sales, marketing and product information for NWI-USA.

18.    At no time during the meeting did Smith reveal what he had long planned to do—namely claim that NWI had breached the joint venture agreement with HSN and that accordingly the joint venture was at an end. Nor did Smith reveal that he had never caused HSN to actually transfer title of the Equipment to the joint venture. To the contrary, Smith acted as if all parties were performing in accordance with their respective agreements and that NWI-USA was going forward at full speed.

19.    On Tuesday, December 9, 2003, merely days after coming to Boston to plan the future of NWI-USA, Smith instituted suit against NWI (Baroni's company), alleging that NWI failed to make over a million dollars in required contributions to NWI-USA ("NWI Suit"). Such contributions, according to the joint venture agreement between NWI and HSN, were to be made to NWI-USA by September 30, 2003. On information and belief, contributions had already been made by NWI to NWI-USA before September 30, 2003 in an amount exceeding $600,000, and that Smith and HSN had been notified shortly after September 30, 2003 that there had been a delay in funding for reasons beyond NWI's control and had agreed to go forward despite the delay in funds. Furthermore, on information and belief, delayed funds approximating $1,780,000 were paid by NWI, and accepted by Smith, in November and on December 9, 2003. Nonetheless, the NWI Suit sought, among other remedies, a declaration that the joint venture agreement between HSN and NWI was null and void.

20.    After the September 30, 2003 deadline for NWI to make its capital contributions to NWI-USA, Smith represented to Kearney USA that there was a joint venture in place and, as a

result thereof, Kearney USA provided Smith with its marketing expertise. In fact, in the fall of 2003 Smith told Kearney USA to continue performing according to the parties' Agreement and that the venture was going forward, despite the fact that NWI was in "technical default" of its payments.

21.    Once Smith filed the NWI suit on behalf of HSN, Smith effectively terminated Kearney USA's relationship with NWI-USA and has denied Kearney USA its right to perform according to his representations and/or the parties' Agreement.

22.    On or about October 21, 2004, Smith filed an affidavit in the NWI Suit, attesting to, among other things, the following: (a) that as of March 2004, the Equipment had not been assembled and was not operational; (b) the Equipment is still owned by HSN and had not been transferred to NWI-USA, and (c) that Smith felt that Kearney USA could not claim that any of its confidential information could be protected as a trade secret because Smith had disclosed Kearney USA's confidential information it in the course of the NWI Suit without a protective order, (d) that Smith had used the funds provided by NWI to ready the equipment for operation, and (f) that Smith now had an investor who was ready to make a substantial investment in the Equipment and the operation of Smith's spunbond business.

23.    On information and belief, Smith has utilized Kearney USA's market and sales information in prospectus' supplied to the investor in order to demonstrate the viability of the business and obtain funding for the business; Smith has further used NWI's funds in order to appropriate the Equipment and the business for himself. In short, at the time that Smith signed the Agreement, Smith knew that NWI had not supplied the funding and had no intention of carrying through with his representations to Kearney USA. Kearney USA believes and therefore alleges that Smith never had an intention of carrying through with the joint venture but that his

conduct shows that Smith was engaged in a fraudulent scheme to obtain funding and information under false pretenses in order to take for himself the business opportunity and to sell it to another investor.

## COUNT I
### (Fraud)

24.     As its first claim for relief, Kearney USA repeats and realleges all of the allegations set forth above.

25.     As herein before alleged, Smith made the statements and representations as statements of fact, including but not limited to his statements regarding the status of the Equipment, that he intended on going forward with the joint venture between HSN and NWI, that Kearney USA was his partner, that Kearney USA had a 20% Class B interest, that Kearney USA would exclusively do the marketing and sales for the joint venture, and that Kearney USA would have the opportunity to be a Class A member at a fair value based upon the anticipated business of the joint venture and that the joint venture was in effect and that the parties were going to make millions. All of these statements were false and were known to Smith to be false when made or Smith should reasonably have known that the statements were false.

26.     Smith made these false statements for the purpose of inducing Kearney USA to rely upon them, and in reliance, Kearney USA contributed its confidential information and substantial marketing expertise to NWI-USA. Kearney USA also forewent other opportunities in order to focus its marketing efforts on NWI-USA.

27.     At the time Smith made these statements, he had no intention of going forward with the joint venture between HSN and NWI or to fulfill HSN's obligations to Kearney USA, under the Agreement or otherwise.

28.     As a direct and proximate result of Smith's misrepresentations, Kearney USA

suffered and continues to suffer substantial damages in an amount to be determined at trial.

## COUNT II
### (Conversion/Misappropriation of Confidential Information)

29.     As an additional and alternative claim for relief, Kearney USA repeats and realleges the allegations set forth above.

30.     By virtue the parties' relationship and Agreement, Smith was given access to, and now possesses, confidential information belonging to Kearney USA.

31.     Kearney USA, as the owner of such confidential information, took reasonable steps to preserve the secrecy of the confidential information.

32.     Upon information and belief, Smith has converted such confidential information, and has misappropriated, exploited, and misused Kearney USA's confidential information for his own purposes.

33.     Upon information and belief, Smith has and continues to exercise dominion and control over the confidential information in a manner inconsistent with Kearney USA's rights.

34.     The disclosure and use of such confidential information by Smith constitutes a misappropriation of trade secrets and confidential information in violation of common law.

35.     As a result of Smith's actions, Kearney USA has suffered and continues to suffer substantial damages in an amount to be determined at trial.

## COUNT III
### (Violation of G.L. c. 93 § 42/Statutory Misappropriation of Trade Secrets and/or Confidential Information)

36.     As an additional and alternative claim for relief, Kearney USA repeats and realleges the allegations set forth above.

37.     By virtue the parties' relationship and Agreement, Smith was given access to, and now possesses, confidential information belonging to Kearney USA.

-10-

38.    Kearney USA, as the owner of such confidential information, took reasonable steps to preserve the secrecy of the confidential information.

39.    Upon information and belief, Smith has converted such confidential information for his own use, and has misappropriated, exploited, and misused Kearney USA's confidential information.

40.    Upon information and belief, Smith and NWI-USA has and continues to exercise dominion and control over the confidential information in a manner inconsistent with Kearney USA's rights.

41.    The disclosure and use of such confidential information by Smith constitutes a misappropriation of trade secrets and confidential information in violation of G.L. c. 93 § 42.

42.    As a result of the Smith's actions, Kearney USA has suffered and continues to suffer substantial damages in an amount to be determined at trial.

## COUNT IV
### (Breach of Fiduciary Obligation)

43.    As an additional and alternative claim for relief, Kearney USA repeats and realleges the allegations set forth above.

44.    On information and belief, Smith was the sole member of NWI-USA. Based on Smith's own allegations and contrary to his representations, the joint venture that was supposed to be represented by NWI-USA never became effective. Smith is therefore responsible as the promoter of NWI-USA for its misrepresentations and, as the promoter and sole member, owns a fiduciary obligation to Kearney USA as a Class B member.

45.    Contrary to his fiduciary obligations to Kearney USA, Smith did not disclose his intent to claim that the joint venture was null and void. Smith's appropriation for himself and for HSN of the business of the joint venture and of Kearney USA's confidential information

supplied to the joint venture were further violations of Smith's fiduciary obligations.

46.    As a result of the Smith's actions, Kearney USA has suffered and continues to
suffer substantial damages in an amount to be determined at trial.

### COUNT V
### (Ch. 93A)

47.    As an additional and alternative claim for relief, Kearney USA repeats and
realleges the allegations set forth above.

48.    At all times relevant hereto, Kearney USA was engaged in the conduct of trade or
commerce within the meaning of G.L. c. 93A.

49.    At all times relevant hereto, Smith is an attorney and a businessman and was
engaged in the conduct of trade or commerce within the meaning of G.L. c. 93A.

50.    The actions of Smith as hereinbefore alleged, constitute unfair and knowingly
deceptive practices prohibited by G.L. c. 93A.

51.    The actions of Smith as hereinbefore alleged, were performed willfully or
knowingly.

52.    As a direct result of Smith's violation of G.L. c. 93A, Kearney USA suffered and
continues to suffer substantial damages in an amount to be determined at trial.

### REQUEST FOR RELIEF

WHEREFORE, Kearney USA respectfully requests that the Court grant the following
relief in its favor:

1.    Issue an Order requiring Smith (and his agents, employers, attorneys, successors
and assigns, or anyone acting directly or indirectly on his behalf) to immediately return to
Kearney USA any and all confidential information of Kearney USA;

2.    Grant judgment, after trial, on all counts against Smith for damages in an amount

to be determined at trial, together with costs, interest and attorneys' fees;

    3.    Award double or treble damages for Smith's knowing and/or willful misconduct;

and

    4.    Award any such other additional relief as the Court deems just and proper.


                        J. KENNETH KEARNEY USA LTD.
                        By its attorneys,

                        William A. Zucker, BBO # 541240
                        Kristin M. Cataldo, BBO # 654033
                        Gadsby Hannah LLP
                        225 Franklin Street
                        Boston, MA  02110
                        (617) 345-7000

November 17, 2004

B0386486v

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

04-4576

J. KENNETH KEARNEY USA LTD., )
)
Plaintiff, )
)
v. )
)
DAVID SMITH, )
)
Defendant. )
)

Civil Action No.

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
MIDDLESEX

NOV 17 2004

Edward J. Sullivan
CLERK

### COMPLAINT AND JURY DEMAND

Plaintiff J. Kenneth Kearney USA Ltd. ("Kearney USA") brings this action against David

Smith ("Smith") for fraud, misuse of confidential information and, alternatively, for breach of

fiduciary duty. These claims for relief arise out of Smith's participation in and direction of a

fraudulent scheme to obtain from Kearney USA confidential business information and to provide

Smith with market and sales information from Kearney USA, to induce Kearney USA to enter

into a business deal with Smith's joint venture, and to induce Kearney USA not to go forward

with other competitive ventures. At the same time, Smith had no intention of going forward with

joint venture and took for himself the opportunities that were to be business opportunities of the

joint venture.

2181E000011/17/04CIVIL      240.00
2181E000011/17/04SUR CHARGE  15.00
2181E000011/17/04SECC        20.00

### PARTIES

1.    Plaintiff Kearney USA is a New York corporation with its principal place of

business at 111 Speen Street, Framingham, Massachusetts. The two operating principals of

Kearney USA are Ken Kearney and Paul Miller, both of whom work and reside in the

Commonwealth of Massachusetts.

2.     Defendant Smith is a Canadian citizen with his principal residence in Orange Beach, Alabama. On information and belief, Smith is at least a fifty percent owner of Hartge Smith Nonwovens LLC ("HSN"), a company duly organized under the laws of the State of Ohio, and an instrumentality of Smith in the scheme to defraud. The other principal of HSN is Perry Hartge.

### JURISDICTION

3.     During the relevant time period, Smith purposefully had contacts with Kearney USA in Massachusetts and, in connection with the claims for relief alleged herein, directed communications to Kearney USA in Massachusetts and made misrepresentations to Kearney USA in Massachusetts that were intended to and did induce reliance by Kearney USA thereon in Massachusetts. Such conduct establishes personal jurisdiction over the defendant under M.G.L. ch. 223A § 3.

### FACTS

4.     Kearney USA is a company that specializes in the marketing and sale of nonwoven fabrics, with a particular expertise in the marketing and sale of spunbond polyester. Kearney USA does business with fabric suppliers and distributors in the United States and abroad, importing fabrics into the United States market for industrial and other commercial clients.

5.     Kearney USA's initial contact with Smith came through Roberto Baroni ("Baroni"), a principal of Nonwoven Industries SpA ("NWI"), an Italian corporation with which Kearney USA had a business relationship. NWI is a leading manufacturer of spunbond fabric in Italy, with expertise in the technology of manufacture, installation, assembly and operation of spunbond equipment and the construction of spunbond plants.

6.     Kearney USA was NWI's marketing and sales agent for NWI's products and

services throughout the United States. Spunbond fabrics are used in industries for a variety of specialized uses. Developing relationships for new products or manufacturers in the spunbond industry is a time consuming and lengthy process. Knowledge of marketing devices, customer contacts, and customer approaches requires a high degree of specialized skill in order to obtain customer confidence and acceptance. At the same, knowledge of market opportunities and sales related information is also specialized market intelligence developed over years of selling into the market. By virtue of its extensive experience with the United States domestic market, Kearney USA has specialized relationships and market and sales information which Kearney USA ordinarily employs to advance its own sales and those of represented manufacturers making sales in the United States.

## Smith's Initial Approach to Baroni and NWI

7.      On information and belief, in 2002, HSN purchased spunbond manufacturing equipment (the "Equipment") at a foreclosure sale in Cincinnati Ohio. HSN had little experience in the manufacture of spunbond fabrics and contacted NWI in May 2002 in determine if NWI was interested in purchasing the equipment. HSN was not then in the business of manufacturing and selling spunbond fabrics in the United States domestic market.

8.      On information and belief, although HSN had obtained the equipment at foreclosure for $295,410, HSN's initial offer to NWI was to sell the same equipment for $4,110,000. HSN also represented to NWI that other companies worldwide were interested in purchasing the equipment, but that HSN, if a sale price could not be agreed upon, was willing to enter into a joint venture with NWI in which HSN would contribute the Equipment, by selling the Equipment allegedly for less than its market value, and NWI would contribute the equipment and manufacturing expertise, as well as cash, in order to manufacture spunbond fabrics in the United States.

-3-

9.    In February of 2003, before consummating any joint venture with Smith and HSN, Baroni approached Kearney USA in Massachusetts about the joint venture and introduced Kearney USA to Smith and HSN for the purpose of providing marketing, sales and cost expertise in the domestic United States market.

10.    In April 2003, Smith caused Nonwovens Industries (USA) L.L.C. ("NWI-USA") to be formed as an Alabama limited liability company, for the purpose of being the vehicle for the joint venture with NWI and Baroni. On information and belief, NWI-USA was to be presented to the industry as a sister company to NWI, thus enabling NWI-USA to capitalize on the goodwill and reputation of NWI and to piggyback onto Kearney USA's marketing efforts for NWI in the United States. In July/August, 2003, Smith and Baroni formalized their relationship, executing a joint venture agreement. However, on information and belief, at no time did Smith cause HSN to actually transfer the Equipment to NWI USA.

### Smith's Representations

11.    Despite the fact that Smith had no intention of actually transferring the Equipment to NWI-USA, Smith approached Kearney USA directly and represented that NWI-USA had been formed and had been capitalized. In a series of meetings and conversations with Kearney USA's principals, Messrs. Kearney and Miller, Smith also represented to Kearney USA that:

(a)    the Equipment had been improved with a "scrap recycling process";

(b)    the Equipment was presently capable of manufacturing flat bond fabrics;

(c)    the Equipment had been tested before HSN purchased it and that it was operational;

(d)    the Equipment had been "shaken down", that there were "no leaks" and that the Equipment was operational;

(e)    Smith had assembled a team that possessed the necessary know-how and technical expertise to operate the Equipment and produce flat bond;

-4-

(f)    the Equipment, while purchased by HSN, was to be transferred to NWI-USA;

(g)    Kearney USA would be the exclusive distributor and broker for NWI-USA's products;

(h)    In exchange for providing its sales and marketing expertise, NWI-USA would be divided into two divisions; an Operational Division, with Class A voting shares, and a Trading Division, with Class B shares;

(i)    Kearney USA would from the outset receive and would be granted 20% of the Class B shares, with a right within 2 and a half years to acquire a 20% interest in the Class A shares at a price of $3,000,000, based upon the forecasted value of the joint venture at that time;

(j)    Smith would cause NWI to enter into a Sales and Marketing Agreement to document Kearney USA's rights;

(k)    Smith considered the relationship with Kearney USA to be of "high importance", that "we are moving forward" and that any delay was simply making sure the "i's are dotted and the t's crossed;" and

(l)    Smith repeatedly referred to Kearney USA as his partner.

12.    Contemporaneously with these representations, Smith also was requesting from Kearney USA information regarding the market, sales, customers and forecasts for expected sales of the joint venture, which Smith assured Kearney would be treated as confidential and proprietary information of Kearney USA.

13.    Smith's representation that there was a viable opportunity to enter the flat bond market was especially attractive to Kearney USA because, at that time, there was only one company that had the technology to produce flat bond in the United States.

14.    As of September 17, 2003, NWI-USA, NWI and Kearney USA entered into a Sales and Marketing Agreement ("the Agreement"). Although made as of September 17, 2003, the Agreement was not actually signed until early October, 2003. The Agreement recognized that as of the date of the Agreement, Kearney USA had a twenty percent (20%) interest in NWI-USA's Class B Units ("Kearney USA Interest") and further provided that Kearney USA would

manage the performance of NWI-USA's Trading Division and direct the sales and marketing. All information already or to be provided to the joint venture was to be treated as confidential and used only for the purposes of the joint venture.

15.    All of these representations were made to Kearney USA in order to cause Kearney USA to stop pursuing other valuable opportunities to bring competing products into the United States market, and to provide Smith with (a) confidential information pertaining to Kearney USA's current customers and marketing plans; (b) industry forecasts and marketing plans; and (c) information concerning Kearney USA's present purchasing power (collectively Kearney USA's "Confidential Information"). At Smith's request, Kearney USA began to create a market for NWI-USA's products, put together operating budgets and forecasts for NWI-USA, began the process of setting up a website for NWI-USA and establishing a dedicated 800 # at its offices for NWI-USA, and hired an independent contractor to work solely on the NWI-USA marketing venture.

16.    In particular, based on Smith's representations, Kearney USA devoted marketing resources and efforts on behalf of NWI-USA, including (a) giving NWI-USA immediate access to its customers, which customers could be turned over to NWI-USA for immediate cash flow operations; (b) providing Smith access to a manufacturing expert in the field of flat bond; (c) further developing and refining its marketing plans and forecasts for NWI-USA; and (d) actively soliciting customers on NWI-USA's behalf. In October 2003, Kearney USA brought one of its top customers to Alabama to meet directly with NWI-USA and Smith.

17.    In December 2003, Smith and Baroni traveled to Boston for a two day meeting with Kearney USA. On Thursday, December 4, 2003, the parties held an all day meeting at Kearney USA's offices in Framingham. During the meeting Smith continued to drum up

excitement over NWI-USA, stating that "they were going to make millions" together and reiterating that they were partners. At the meeting, Kearney USA further revealed sales, marketing and product information for NWI-USA.

18.    At no time during the meeting did Smith reveal what he had long planned to do—namely claim that NWI had breached the joint venture agreement with HSN and that accordingly the joint venture was at an end. Nor did Smith reveal that he had never caused HSN to actually transfer title of the Equipment to the joint venture. To the contrary, Smith acted as if all parties were performing in accordance with their respective agreements and that NWI-USA was going forward at full speed.

19.    On Tuesday, December 9, 2003, merely days after coming to Boston to plan the future of NWI-USA, Smith instituted suit against NWI (Baroni's company), alleging that NWI failed to make over a million dollars in required contributions to NWI-USA ("NWI Suit"). Such contributions, according to the joint venture agreement between NWI and HSN, were to be made to NWI-USA by September 30, 2003. On information and belief, contributions had already been made by NWI to NWI-USA before September 30, 2003 in an amount exceeding $600,000, and that Smith and HSN had been notified shortly after September 30, 2003 that there had been a delay in funding for reasons beyond NWI's control and had agreed to go forward despite the delay in funds. Furthermore, on information and belief, delayed funds approximating $1,780,000 were paid by NWI, and accepted by Smith, in November and on December 9, 2003. Nonetheless, the NWI Suit sought, among other remedies, a declaration that the joint venture agreement between HSN and NWI was null and void.

20.    After the September 30, 2003 deadline for NWI to make its capital contributions to NWI-USA, Smith represented to Kearney USA that there was a joint venture in place and, as a

-7-

result thereof, Kearney USA provided Smith with its marketing expertise. In fact, in the fall of 2003 Smith told Kearney USA to continue performing according to the parties' Agreement and that the venture was going forward, despite the fact that NWI was in "technical default" of its payments.

21.     Once Smith filed the NWI suit on behalf of HSN, Smith effectively terminated Kearney USA's relationship with NWI-USA and has denied Kearney USA its right to perform according to his representations and/or the parties' Agreement.

22.     On or about October 21, 2004, Smith filed an affidavit in the NWI Suit, attesting to, among other things, the following: (a) that as of March 2004, the Equipment had not been assembled and was not operational; (b) the Equipment is still owned by HSN and had not been transferred to NWI-USA, and (c) that Smith felt that Kearney USA could not claim that any of its confidential information could be protected as a trade secret because Smith had disclosed Kearney USA's confidential information it in the course of the NWI Suit without a protective order, (d) that Smith had used the funds provided by NWI to ready the equipment for operation, and (f) that Smith now had an investor who was ready to make a substantial investment in the Equipment and the operation of Smith's spunbond business.

23.     On information and belief, Smith has utilized Kearney USA's market and sales information in prospectus' supplied to the investor in order to demonstrate the viability of the business and obtain funding for the business; Smith has further used NWI's funds in order to appropriate the Equipment and the business for himself. In short, at the time that Smith signed the Agreement, Smith knew that NWI had not supplied the funding and had no intention of carrying through with his representations to Kearney USA. Kearney USA believes and therefore alleges that Smith never had an intention of carrying through with the joint venture but that his

-8-

conduct shows that Smith was engaged in a fraudulent scheme to obtain funding and information under false pretenses in order to take for himself the business opportunity and to sell it to another investor.

## COUNT I
### (Fraud)

24.    As its first claim for relief, Kearney USA repeats and realleges all of the allegations set forth above.

25.    As herein before alleged, Smith made the statements and representations as statements of fact, including but not limited to his statements regarding the status of the Equipment, that he intended on going forward with the joint venture between HSN and NWI, that Kearney USA was his partner, that Kearney USA had a 20% Class B interest, that Kearney USA would exclusively do the marketing and sales for the joint venture, and that Kearney USA would have the opportunity to be a Class A member at a fair value based upon the anticipated business of the joint venture and that the joint venture was in effect and that the parties were going to make millions. All of these statements were false and were known to Smith to be false when made or Smith should reasonably have known that the statements were false.

26.    Smith made these false statements for the purpose of inducing Kearney USA to rely upon them, and in reliance, Kearney USA contributed its confidential information and substantial marketing expertise to NWI-USA. Kearney USA also forewent other opportunities in order to focus its marketing efforts on NWI-USA.

27.    At the time Smith made these statements, he had no intention of going forward with the joint venture between HSN and NWI or to fulfill HSN's obligations to Kearney USA, under the Agreement or otherwise.

28.    As a direct and proximate result of Smith's misrepresentations, Kearney USA

-9-

suffered and continues to suffer substantial damages in an amount to be determined at trial.

## COUNT II
### (Conversion/Misappropriation of Confidential Information)

29.    As an additional and alternative claim for relief, Kearney USA repeats and realleges the allegations set forth above.

30.    By virtue the parties' relationship and Agreement, Smith was given access to, and now possesses, confidential information belonging to Kearney USA.

31.    Kearney USA, as the owner of such confidential information, took reasonable steps to preserve the secrecy of the confidential information.

32.    Upon information and belief, Smith has converted such confidential information, and has misappropriated, exploited, and misused Kearney USA's confidential information for his own purposes.

33.    Upon information and belief, Smith has and continues to exercise dominion and control over the confidential information in a manner inconsistent with Kearney USA's rights.

34.    The disclosure and use of such confidential information by Smith constitutes a misappropriation of trade secrets and confidential information in violation of common law.

35.    As a result of Smith's actions, Kearney USA has suffered and continues to suffer substantial damages in an amount to be determined at trial.

## COUNT III
### (Violation of G.L. c. 93 § 42/Statutory Misappropriation of Trade Secrets and/or Confidential Information)

36.    As an additional and alternative claim for relief, Kearney USA repeats and realleges the allegations set forth above.

37.    By virtue the parties' relationship and Agreement, Smith was given access to, and now possesses, confidential information belonging to Kearney USA.

-10-

38.     Kearney USA, as the owner of such confidential information , took reasonable steps to preserve the secrecy of the confidential information.

39.     Upon information and belief, Smith has converted such confidential information for his own use, and has misappropriated, exploited, and misused Kearney USA's confidential information.

40.     Upon information and belief, Smith and NWI-USA has and continues to exercise dominion and control over the confidential information in a manner inconsistent with Kearney USA's rights.

41.     The disclosure and use of such confidential information by Smith constitutes a misappropriation of trade secrets and confidential information in violation of G.L. c. 93 § 42.

42.     As a result of the Smith's actions, Kearney USA has suffered and continues to suffer substantial damages in an amount to be determined at trial.

### COUNT IV
### (Breach of Fiduciary Obligation)

43.     As an additional and alternative claim for relief, Kearney USA repeats and realleges the allegations set forth above.

44.     On information and belief, Smith was the sole member of NWI-USA. Based on Smith's own allegations and contrary to his representations, the joint venture that was supposed to be represented by NWI-USA never became effective. Smith is therefore responsible as the promoter of NWI-USA for its misrepresentations and, as the promoter and sole member, owns a fiduciary obligation to Kearney USA as a Class B member.

45.     Contrary to his fiduciary obligations to Kearney USA, Smith did not disclose his intent to claim that the joint venture was null and void. Smith's appropriation for himself and for HSN of the business of the joint venture and of Kearney USA's confidential information

-11-

supplied to the joint venture were further violations of Smith's fiduciary obligations.

46.    As a result of the Smith's actions, Kearney USA has suffered and continues to suffer substantial damages in an amount to be determined at trial.

## COUNT V
### (Ch. 93A)

47.    As an additional and alternative claim for relief, Kearney USA repeats and realleges the allegations set forth above.

48.    At all times relevant hereto, Kearney USA was engaged in the conduct of trade or commerce within the meaning of G.L. c. 93A.

49.    At all times relevant hereto, Smith is an attorney and a businessman and was engaged in the conduct of trade or commerce within the meaning of G.L. c. 93A.

50.    The actions of Smith as hereinbefore alleged, constitute unfair and knowingly deceptive practices prohibited by G.L. c. 93A.

51.    The actions of Smith as hereinbefore alleged, were performed willfully or knowingly.

52.    As a direct result of Smith's violation of G.L. c. 93A, Kearney USA suffered and continues to suffer substantial damages in an amount to be determined at trial.

## REQUEST FOR RELIEF

WHEREFORE, Kearney USA respectfully requests that the Court grant the following relief in its favor:

1.    Issue an Order requiring Smith (and his agents, employers, attorneys, successors and assigns, or anyone acting directly or indirectly on his behalf) to immediately return to Kearney USA any and all confidential information of Kearney USA;

2.    Grant judgment, after trial, on all counts against Smith for damages in an amount

-12-

to be determined at trial, together with costs, interest and attorneys' fees;

     3.    Award double or treble damages for Smith's knowing and/or willful misconduct;

and

     4.    Award any such other additional relief as the Court deems just and proper.

                   J. KENNETH KEARNEY USA LTD.
                   By its attorneys,

                   William A. Zucker, BBO # 541240
                   Kristin M. Cataldo, BBO # 654033
                   Gadsby Hannah LLP
                   225 Franklin Street
                   Boston, MA  02110
                   (617) 345-7000

November 17, 2004

B0386486v

| CIVIL ACTION COVER SHEET | DOCKET NO(S) 04-4576 | Trial Court of Massachusetts Superior Court Department County: _____ |

**PLAINTIFF(S)**

J. KENNETH KEARNEY USA LTD.

**DEFENDANT(S)**

DAVID SMITH

**ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE**
William A. Zucker, BBO 541240
Kristin M. Cataldo, BBO 654033
Gadsby Hannah LLP, 225 Franklin St, Boston, MA
02110
Board of Bar Overseers number: see above

**ATTORNEY (if known)**

## Origin code and track designation

Place an x in one box only:
- [X] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)
- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

### TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

CODE NO.      TYPE OF ACTION (specify)      TRACK      IS THIS A JURY CASE?

B99      Fraud/of Misappropriation confidential info      (F)      ( X ) Yes      ( ) No

**The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.**

#### TORT CLAIMS
(Attach additional sheets as necessary)

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR THE COUNTY OF MIDDLESEX
NOV 17 2004
Edward J. Sullivan
CLERK

A. Documented medical expenses to date:
1. Total hospital expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . .
2. Total Doctor expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . .
3. Total chiropractic expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . .
4. Total physical therapy expenses . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . .
5. Total other expenses (describe) . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . .
                                                                    Subtotal $. . . . . . . . . . .
B. Documented lost wages and compensation to date . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . .
C. Documented property damages to date . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . .
D. Reasonably anticipated future medical and hospital expenses . . . . . . . . . . . . . . . $. . . . . . . . . . .
E. Reasonably anticipated lost wages . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . .
F. Other documented items of damages (describe)
                                                                              $. . . . . . . . . . .
G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

Through this action, plaintiff seeks damages, in an amount to be
determined at trial, for defendant's intentional misrepresentations,
made to plaintiff in order to induce plaintiff into providing defendant      $ to be
with its expertise, confidential information and to forego other             TOTAL $ determined . . .
valuable business opportunities.

#### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

N/A

TOTAL $. . . . . . . . . . .

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT
N/A

**"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."**

Signature of Attorney of Record _____      DATE: 11·17·04

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

## Commonwealth of Massachusetts
### MIDDLESEX SUPERIOR COURT
#### Case Summary
#### Civil Docket

## MICV2004-04576
### J. Kenneth Kearney USA LTD. v Smith

| | | | | |
|---|---|---|---|---|
| **File Date** | 11/17/2004 | **Status** | Disposed: transfered to other court (dtrans) | |
| **Status Date** | 12/21/2004 | **Session** | C - Cv C (11A Cambridge) | |
| **Origin** | 1 | **Case Type** | B99 - Misc tort | |
| **Lead Case** | | **Track** | F | |

| | | | | | |
|---|---|---|---|---|---|
| **Service** | 02/15/2005 | **Answer** | 04/16/2005 | **Rule12/19/20** | 04/16/2005 |
| **Rule 15** | 04/16/2005 | **Discovery** | 09/13/2005 | **Rule 56** | 10/13/2005 |
| **Final PTC** | 11/12/2005 | **Disposition** | 01/11/2006 | **Jury Trial** | Yes |

### PARTIES

**Plaintiff**
J. Kenneth Kearney USA LTD.
111 Speen Street
Active 11/17/2004

**Private Counsel 541240**
William A Zucker
Gadsby Hannah LLP
225 Franklin Street
22nd floor
Boston, MA 02110-2811
Phone: 617-345-7000
Fax: 617-345-7050
Active 11/17/2004 Notify

**Private Counsel 654033**
Kristin M. Cataldo
Gadsby Hannah LLP
225 Franklin Street
22nd floor
Boston, MA 02110-2811
Phone: 617-345-7000
Fax: 617-345-7050
Active 11/17/2004 Notify

**Defendant**
David  Smith
Served: 11/30/2004
Served (answr pending) 12/07/2004

**Private Counsel 548347**
Timothy P Van Dyck
Edwards & Angell
101 Federal Street
Boston, MA 02110
Phone: 617-951-2254
Fax: 617-439-4170
Active 12/21/2004 Notify

**Private Counsel 636962**
Windy L Rosebush
Edwards & Angell
101 Federal Street
Boston, MA 02110
Phone: 617-439-4444
Fax: 617-439-4170
Active 12/21/2004 Notify

### ENTRIES

| Date | Paper | Text |
|---|---|---|
| 11/17/2004 | 1.0 | Complaint & civil action cover sheet filed |

MAS-20031124
gilmanr

Case 1:04-cv-12643-RCL    Document 5-2    Filed 12/30/2004    Page 14 of 16

Commonwealth of Massachusetts
MIDDLESEX SUPERIOR COURT
Case Summary
Civil Docket

12/21/2004
01:56 PM

## MICV2004-04576
### J. Kenneth Kearney USA LTD. v Smith

| Date | Paper | Text |
| --- | --- | --- |
| 11/17/2004 | | Origin 1, Type B99, Track F. |
| 12/07/2004 | 2.0 | SERVICE RETURNED: David Smith(Defendant)accepts for David Smith 11/30/04 |
| 12/21/2004 | 3.0 | Case REMOVED this date to US District Court of Massachusetts by defendant David Smith |
| 12/21/2004 | | ABOVE ACTION THIS DAY REMOVED TO US DISTRICT COURT |



**TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER**

## COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION

No. 04- 4576

.......... MIDDLESEX .......... , ss
[seal]

RECEIVED

J .. KENNETH..KEARNEY..USA.LTD. , Plaintiff(s)

v.

...... DAVID..SMITH .............. , Defendant(s)

MIDDLESEX SHERIFF
CIVIL DIVISION

## SUMMONS

To the above-named Defendant:

You are hereby summoned and required to serve upon ..William.A..Zucker..and.Kristin.M..Cataldo
of.Gadsby.Hannah.LLP .......... plaintiff's attorney, whose address is .225.Franklin.Street,.21st.Fl
Boston,.MA.02110 .......... an answer to the complaint which is herewith
served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you
fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also
required to file your answer to the complaint in the office of the Clerk of this court at .Superior..Court.House
40.Thorndike.St,.Cambridge,.MA.02141.. either before service upon plaintiff's attorney or within a
reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may
have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's
claim or you will thereafter be barred from making such claim in any other action.

Witness, Suzanne V. DelVecchio, Esquire, at .Cambridge ..........
the .......... 17th .......... day of ..November ..........
.........., in the year of our Lord .2004 .......... .

Edward J Sullivan
**Clerk**

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used
   for each defendant, each should be addressed to the particular defendant.

FORM NO. SUP. — 001